that we believe the Court needs to address. The first issue is whether he was denied a fair trial because of the failure of the government to disclose certain materials which we believe were proper braiding material and improperly not disclosed to the defendant. The second issue relates to a motion for a new trial that was filed on his behalf and for which the district judge did not have a hearing to determine what the facts actually were but made a decision on insufficient facts that we believe tainted Mr. Cody's due process rights. And the third issue is the sufficiency of the evidence with regard to count two that Mr. Cody was found guilty on. The government was well aware that victim number one was in foster care when the events forming the basis for the prosecution occurred. They were aware of her status as a youth in the custody of the Nebraska Department of Health and Human Services because critical portions of her testimony related to references to her foster parents and why she didn't call them to pick her up when she was with Mr. Cody and claims that she wanted to escape. Now, she would have only generally been in foster care for two reasons. She would have been a minor, but she would have, under Nebraska law, we vernacularly call them 3A and 3B cases. In a 3A case ---- Kennedy, counsel, let me get to the bottom of what is critical, at least to me, on this issue, was sufficiently relevant to be reversible error under abuse of discretion review. And the district court asked trial counsels straight out this question at pages 344 and 345 of the transcript, I don't understand the answer. So maybe you can put it in, at least for me, more meaningful terms. In other words, this was all before the initial contact with the defendant. No, I don't believe so, Judge. The victim, one, was in foster care, as I understand it, when she met the defendant. Well, yes, but this mistake, if that's what it was, on the timing ---- I guess I'm not following you what timing we're talking about. Well, isn't it the one week versus two months? Oh, with regard to what she was allowed to ---- the defense counsel was allowed to cross-examine her on. Well, okay, but if there's something else, you know, just, I don't understand why this is sufficient to be reversible error on appeal. Judge, I don't disagree with the timeframe only not probably being reversible error. It wasn't so much the timeframe. There was, when the evidence was discovered by defense counsel, first of all, it was between day two and day three of the trial and between day one and day two of the examination and cross-examination of victim number one. It was only at that time that defense counsel learned that there had been a juvenile proceeding, I presume, but I don't know. I wasn't trial counsel. He must have learned of it because she, in her testimony, she talked about her foster parents. But that was available information. I don't know that it was. Well, wait a minute. He found the information, so it was available, right? I mean, it wasn't deeply hidden. It was equally available to the defendant as it was to the government, wasn't it? Well, Judge, I don't know. I wasn't trial counsel. I didn't get discovery. I only know But look, actually, prior counsel for the defendant brought it to the attention of the government. And he Right? He did. And he said, it's out there. It's available. We have it. And he never asked for a continuance. Right? I mean, and so here's what you're confronted with. You're the trial judge and they say this is out there. It's a surprise. It's actually something that's a surprise but was available to both parties. And if nobody ever asked for a continuance and the, frankly, the answer to what's it relevant to is at pages 344 and 345 is mostly incomprehensible. I mean, it looks like it's only tied to impeachment. Now, I'm an old trial judge, like, for 25 years. And I'll just tell you, when I look at that, I'd say, well, impeachment isn't the highest priority. And you can impeach with extrinsic evidence. Now, the evidence is now in hand. So it's sitting there. The defense counsel's got it. They can ask questions about it. If they get a bad answer, under the rule, you know, you're not allowed to use the certified document as evidence to show impeachment because it's extrinsic evidence of a bad act. So it's not admissible. And so I'm having a hard time getting to where this whole thing can be an abuse of discretion. Now, I could get it if you asked for a continuance and the judge said, no way, we're trying this case, we're moving forward. But in this circumstance, where now that's laid in, give me your best argument for why the judge abused his discretion. Well, first of all, I have to admit, trial counsel did not raise this as a Brady issue. He brought it in as a cross-examination issue. That's how he raised it. I have, in my brief, have indicated that it was plain error, clear error for him not to raise this as a Brady issue. But the Brady issue, isn't it a fatal flaw that it was equally accessible to the defense? If the defense knew that there was a juvenile court proceeding, the problem was But did the government know? I mean, all you've got is an inference that the government knew. The government had to know. And it can't have been a Brady violation because he learned of it in time to rectify things, including by asking for a continuance or by simply taking the new information and spending a little time the night before cross to work it into what was already prepared. Well, that was his intent. He had discovered it, I think, on the record at midnight or 1 o'clock in the morning, and he was prepared to cross-examine her on some of the And rightly so disclosed to Judge Rossiter that he had this information. And Judge Rossiter's concern was that these were supposed to be sealed records, so he wasn't going to allow him leeway in terms of cross – much leeway in terms of cross-examination. And when it ended up, you're right, it turned out to be this timeframe, which I agree with you. I don't know that the timeframe itself was material, but that was the only issue that he was really allowed to cross-examine in the end when it was synthesized down, what he could ask, what he couldn't ask. So that's the issue, is the government had to have known. They knew she was in foster care. That was an integral part of their examination of Victim 1. She was in foster care. It is inconceivable that law enforcement or the government never asked her why she was in foster care. And if they – under Nebraska law, the only way you get into foster care is if you have an – usually an active juvenile court case. In Nebraska, that's age 19. You age out at 19. There are only two ways you get into foster care. Well, that's an overgeneralization. There are two main ways in which under Nebraska law a child goes into foster care. Normally it's if her parents or his or her parents are unwilling or unable to provide care for them. Those are called 3A cases. And the other way they do it is if the child has committed an offense that would be either an offense as an adult, could be a status offense, it could be a misdemeanor, or it could be an infraction, and the juvenile court has taken jurisdiction over that child, and that child would then be placed in many circumstances in foster care. So there's only two ways this victim could have been in foster care, and that was with an open juvenile court docket. It's unclear to me what information defense had with regard to this – excuse me – with regard to this, but it became clear, I assume, during the first day of Victim 1's testimony which he testified about her foster parents. I assume, I don't know, but I assume that was why defense counsel went and investigated whether there was a juvenile court proceeding, and that information is available on the Nebraska filing system, which we call Justice. So that's how he was able to obtain this, but he had to first know that there was a juvenile court proceeding. But isn't all of this just to get hopefully more persuasive impeachment, and a lot of it's going to be barred under 412 to 14? Well, that's another argument, Judge, is that had this information But we have to take this with the absence of a request for a continuance or a specific Brady request objection. Well, and that would be that this was exculpatory or impeachment material. How was it exculpatory? Well, probably you're right, probably more impeachment, because Well, I think it's solely impeachment, and obviously the jury, I should say obvious, it would seem obvious that the jury credited J.R. Yes. For explanation of the timeframe Correct. I made a mistake and perfectly reasonable. Our position is that is So now we get into 412 stuff. Well, there's other things other than 412 stuff, actually. That's a separate issue. Well, it would be a big issue if the Brady issue had been raised. I agree. And we have the district court's guidance on its import. I agree. There was also evidence that portrayed an established pattern of lying and dishonest acts with regard to victim number one, J.R. There was also false evidence or allegations that she had made false claims of abuse from her parents. These would have all been mitigating issues for the defendant or mitigating because it would have placed J.R. or victim number one in a totally different light. Your Honor, I see I am out of time. I have a few minutes for rebuttal. Thank you. Ms. Woods. Yes, Your Honor. May it please the Court in opposing counsel, I do not believe in this situation that we can have a Brady violation for several key reasons, the first being that the material was never in the government's possession, which is a necessary fact. So you're conceding it's preserved for appeal? Your Honor, it is a plain error issue that was not raised below. That would be my stance on the standard of review, Your Honor. Well, is there a case that says there's plain error review in this situation? Yes, Your Honor, and I believe, actually. I know the Supreme Court has said everything gets plain error review. Yes, Your Honor, and I believe in Mr. Cody's brief, he actually also put forward plain error as the standard of review for this particular matter. And if you would like, Judge, I can retrieve that. It's at my table. Oh, but I don't see how this can be reviewed without a trial record. Your Honor. Any error. You are correct that the record is sparse on this issue, and respectfully, our position on that would be that trial counsel, if he thought a record of this issue was significant for appeal, could have offered the challenged records as an appellate exhibit, could have asked for a continuance, and could have requested a lengthier hearing on the matter. We did have a hearing on this issue outside the presence of the jury at the beginning of that day of trial, so respectfully, when opposing counsel indicated we should have had a hearing, we did have a hearing. It was not a lengthy hearing, and I do agree that the record is not well-developed on the exhibit itself, but I also would offer that that is something that trial counsel below obviously chose strategy-wise to develop the record that was developed, and perhaps he did not see anything in those records that merited further litigation. There's no way to know that because that would morph this into an ineffective assistance of counsel claim, and it is the exceptional case where that would be considered on direct appeal. The other issue that we have is if this is not in the government's possession, I do not believe if the court is to even consider the Brady claim on a plain error analysis because it was not preserved below, and it's my understanding that if an issue is not preserved below, is raised for the first time on appeal, it becomes a plain error analysis. We have several issues. We do not have a suppression. You have to have a suppression in a Brady claim. Mr. Cody does acknowledge in his brief that these records were not in my possession, and I will also acknowledge that opposing counsel's knowledge of foster care and state juvenile law greatly exceeds my own. I am fortunate the law does not require me. Not every Brady giglio issue involves documents. Absolutely, Your Honor. It's something that the witness told the government or didn't tell the government and the government should have asked about. So I don't understand. The possession argument doesn't seem to me to be very telling here. And, Your Honor, I believe in the record it is clear that we had a conversation with the victim. Once trial counsel raised these records to us, we did provide, as also in the record, her criminal history checks, a pretrial services report. A pretrial services report typically indicates any publicly available criminal matters that exist about an individual. In addition to that, her status as a foster care child was disclosed. And, again, without a record below, it's difficult, but that was in the discovery for the case, and she testified to it on direct. I can't remember from that colloquy that the government disclosed whether it knew of the records. We did not know of the records, and we did tell the Chief Judge Ross, Your Honor, that we did not have the records and were not aware of them. And I believe in Mr. Cody's brief there is some common ground on that. They do acknowledge that we did not have the records in our possession and were not aware of the records. And for what it's worth, trial counsel is clearly experienced in Nebraska state law. The law does not require me, once I'm aware she is a foster care child, to go out to every publicly available source and investigate that issue on that level. And if we were to rule that way, it would be greatly extending the government's burden in these cases significantly beyond what the law currently requires. In addition to that, these records were publicly available, and publicly available records that are available to a defendant through other channels also cannot support a Brady claim as laid out in the government's brief. In addition to that, as the Court noted from Jean-Pierre, the material was discovered prior to cross-examination, and in that situation, unless it is clear that trial counsel was somehow, and the defendant, significantly harmed by the timing of that, when that material is available prior to cross-examination, it is not a Brady violation. And I believe in Mr. Cody's brief he does acknowledge that the material was received prior to cross-examination, which under U.S. v. Jean-Pierre, greatly limits the ability to make a viable claim on that point. In addition to this, Your Honor, I would like to talk briefly about the evidence in this case, because she has to show Mr. Cody that the material was significant enough to create a reasonable probability of acquittal. Now you're addressing an issue raised on appeal but not argued. So you're opening it up for rebuttal. Oh, yes, Your Honor, and I apologize. I am relating that to the elements of a Brady claim. I'm sorry. I thought that was in the briefs. My apologies. But understood that it's open. Well, how is sufficiency relevant to that? Well, in order to state a Brady claim, part of the claim is whether or not it's material. And my understanding of materiality is that it is measured in part by whether the outcome of the proceeding would be different. And I believe in this situation with the amount of evidence that is available in the trial record that the jury heard, and based on what has been presented, the use of this evidence would have been. It is difficult to say it's material evidence if the weight of the evidence would still greatly support the jury's verdict. Given her role in the prosecution, it would be material. Right. The real question is, if we're going to talk about this, to me, is that there's a lot of claim that relates to credibility and credibility of the witness was tried fully here and there were a lot of questions asked about it. And the question that I thought was, the issue that was raised by Ms. Frank that I thought was fascinating is that she asserts that there is exculpatory evidence in here that somehow is different than merely attacking the credibility of the witness. Do you know what evidence specifically she's pointing to? Your Honor, when I was reviewing the record, there were allegations that the victim was seeing adult-aged men while a juvenile, which would be barred by 412. There was a request by trial counsel to use her mental health records, which is separately inadmissible because that was not put in issue on direct examination that her mental health was somehow harmed by this matter. I'm not answering the question. Your Honor, I'm recalling from memory what I recall from the records, which she is indicating would have been. The records are not in the record on appeal. Correct, Your Honor. To my knowledge, they are not in the appellate exhibit, and they were not made in the exhibit. The defense counsel, did only the trial court get to see them, the documents themselves? Trial counsel brought the records. He had his copy, and he talked us through what was in there, and I don't believe he even left us with a copy, Your Honor. The defense counsel claimed that anything that was in the record was exculpatory as opposed to. He did not, Your Honor. And so that's never been raised, never been preserved. There's nothing in the record that we can point to that says this is exculpatory evidence because we don't have the records. Correct, Your Honor. Speculation would have to guide the decision in that situation. And so the only people that know are the people that were in that trial courtroom in front of Judge Rossiter. That is correct, Your Honor, and we would only know what was shared with us by trial counsel. Okay. You are correct, Your Honor. And Your Honor framed my argument better than me, not surprisingly, that essentially that is what I'm trying to get to in terms of the evidences. If the use of it was to say I was with my foster parents for a month prior to getting trafficked by Mr. Cody versus a few weeks or a few months, how can we say that that would have impacted the jury's assessment of this case? In addition to that, the larger issue is Cody in his brief attacks this victim's credibility many ways. Under the law, Mr. Cody is not the person who assesses the victim's credibility. The jury are the individuals that assess the credibility of the victim. And Mr. Cody's counsel was able to attack her credibility throughout the brief. So that is clearly something that was available to trial counsel, and he did attack the victim's credibility. But there is clearly much more critical issues and areas of her testimony that were already attacked going to her credibility than the issue that we are discussing now, how long she was with those foster parents prior to the crimes committing or if it overlapped at all, which it sounds like, from my understanding of the record, the trafficking began after he separated her from her foster parents. So I am somewhat confused as to how we are now saying that this time frame overlaps because it's my understanding that he took her after that and she was not with them again until she got away from Mr. Cody. I would also like to just briefly address the sufficiency of the evidence on count two. On count two, we had several texts. You are opening it up for a moment. Yes, Your Honor, and I'm sorry. I thought sufficiency of evidence was discussed previously, but I understood, Your Honor. That's all right. It's usually not wise, but there's nothing wrong with it. I believe in her brief as well that she attacked the sufficiency of the evidence on the count for which Ms. Manley is the victim. And on that count, Your Honor, the sufficiency of the evidence, I believe that we had text messages and misrepresentations from Mr. Cody that were made to Ms. Manley that indicated that his ex-girlfriend made significant money, that she would make millions, that she would lead a luxurious lifestyle and things of that nature. We also entered into evidence his own words in conversations with that ex-girlfriend where she cannot make her rent payments. She was clearly not living the lifestyle that he indicated to Ms. Manley to induce her into this life of prostitution. So in the brief, it is discussed that there are no misrepresentations that Mr. Cody made, but I believe, and we responded accordingly as well, that there are significant text messages from him and other evidence that corroborates Ms. Manley's testimony that she was lied to and defrauded in order to get her into this lifestyle. I would also submit to the Court, as we did in the brief, that Ms. Manley was corroborated by Ms. Roby's testimony as well. Some of the same misrepresentations were made to both victims. There is some argument as well that this matter was insufficient in part because of the fact that she got some money and things of that nature, but we provided cases in the brief, U.S. v. Taylor, U.S. v. McMillian, that indicated that in similar situations, the Eighth Circuit has found that to be sufficient evidence, and so we would ask that you also affirm count two on the sufficiency of the evidence. Thank you, Your Honors, for your time. I appreciate it. Ms. Frank for rebuttal? Just briefly, Your Honor. With regard to the issue of the materials, we're never in the government's possession. I don't think that alleviates the government's duty to figure out that it's out there. They had law enforcement. They knew that she was in foster care. So I don't think that alleviates their burden and makes any difference as to whether or not they were in the possession. But, you know, she's a witness, not a party to the litigation. We've always imposed, like, different obligations with evidence directly relating to the defendant that may be exculpatory that is in the government's possession. They've sent people out. They've done interviews. They've gotten a statement that's exculpatory. You know, that's a different thing than this is, which is truly. I think it's impeachment evidence. You know, I'm having a hard time finding where the exculpatory nature of it is in the record. And maybe I'm wrong and maybe you can point it out to me. Judge, I don't. I'm not going to argue with you on that one. There wasn't strong exculpatory evidence. I think it was in the sense that it was strong impeachment materials. Well, it kind of is and it's kind of not because there's a lot said about, like, she was, like, in foster care for two months before she met the defendant. Well, actually what she said was, I was in foster care for two months before I went to college. And I'm not sure that those dates are co-terminous. She hadn't started college yet. In my understanding, she was going to be in foster care for two months until she could attend college. Right. Right. Right. I don't think that timing issue, to be honest with you, is material. I think what's more material is the fact that the other materials that were presented to or discussed in front of Judge Rossiter would have been extremely important in testing the veracity of her testimony. And, as counsel just pointed out, victim one corroborated the testimony of victim two. So it enforced the testimony of victim two. And that's problematic to me in terms of being a Brady-type violation and not allowing Mr. Cody a fair trial. I mean, her testimony was so central. You can't ignore it. The only way you can deal with it is to show that she's a liar, she's a chronic liar, and she's a chronic accuser of false illegal acts. You know, the Judge Rossiter made a determination that these should have been sealed under Nebraska law, and he was looking at it kind of very narrowly at that point. Yes. Is that really something that the United States District Judge ought to be considering since the State of Nebraska apparently decided to file them in the clear anyhow? Well, first of all, those records were not subject to sealing under Nebraska law. Okay. The records that are subject to sealing are 3B records, which generally relate to juvenile delinquents or status offenders. She was not, as far as I can tell, and this is not in the record because it wasn't discussed as to why she was in foster care, but it's my understanding she was in foster care due to her parents being unable, unwilling to care for her. Those records do not get sealed, and that's why they were not sealed. But Judge Rossiter seemed to be making he said, I'm not going to let you cross-examine with what should be sealed records. He said that. So he limited the cross-examination that there was available to the point that it was utterly useless in that, yes, it is a two-week timing period or a one-month timing period was the difference. Was she living in foster care for two months before? And I didn't read it that way. I didn't read her testimony to be that she had been living in foster care for two months. I read it the same way you did, that she would have been in foster care for two months until she went to college. So to be honest, I mean, I didn't think that was the most he couldn't do anything with it. That's where it was. And that the materials that were there were so material to victim number one's testimony in terms of what happened and carried over to victim number two.  And the fact that I was able to cross-examine her testimony, which I did discuss sufficiency of the evidence in the brief. I just haven't argued it here today. I haven't had time. But the sufficiency of the evidence I really only raised as regard to victim number two because if you believe victim number one's testimony without the ability to cross-examine her, there probably is sufficient evidence. So that's why it is crucial and key to her, to the defense. Got it. Thank you, Your Honor. Thank you. Thank you, counsel. Case has been well briefed and effectively argued, and we'll take it under advisement.